UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| ANGELA MARIE EAGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 6:14-cv-10-JMH |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 15, 16] on Plaintiff's appeal of the Commissioner's denial of his application for supplemental security income. [Tr. 17-25].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 19]. Under step two, the ALJ found that Plaintiff's inguinal hernia and history of

lupus with Reynaud's phenomenon, depression, post-traumatic stress disorder, obesity, and history of polysubstance abuse were "severe" as defined by the agency's regulations. [Tr. 19]; 20 CFR § 416.920(c).

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 20-21]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform light work, but was limited to simple instructions and tasks in a non-public setting with no more than casual, infrequent contact with co-workers and supervisors. [Tr. 21]. Plaintiff was additionally limited in that any work performed by Plaintiff would have to accommodate her marginal education. [Tr. 21].

The ALJ found that Plaintiff had no past relevant work. [Tr. 24]. However, there were jobs in the national economy that Plaintiff could perform. [Tr. 24]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 25].

On this appeal, Plaintiff argues that the ALJ erred by failing to adopt a prior 1993 finding in favor of the Plaintiff, that the ALJ failed to incorporate all of Plaintiff's limitations in the residual functional capacity finding and

3

subsequent hypothetical to the vocational expert, and that the ALJ's determination was not based on substantial evidence.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Factual and Procedural Background

Plaintiff was 37 years of age at the alleged disability date. [Tr. 17, 34]. She has a sixth grade education and stated that she is only able to read certain small words and was generally not able to count money [Tr. 35]. As of the date of the hearing, she had not worked in nine years, although her last

4

job was at a deli. [Tr. 38]. Plaintiff filed a Title XVI application for supplemental security income (SSI), alleging disability beginning on August 1, 2006. The claim was denied initially and upon reconsideration. [Tr. 17]. Plaintiff requested a hearing with the ALJ, which took place on December 14, 2011. [Tr. 17]. The ALJ issued an unfavorable decision denying SSI on September 17, 2012. [Tr. 25].

According to the Plaintiff, she has pain in her hands, feet, joints, and knees. [Tr. 49]. She reports that she suffers from lupus, Reynaud's disease, hepatitis, rheumatoid arthritis, chronic obstructive pulmonary disease, as well as post-traumatic stress disorder that limit her ability to work. [Tr. 178].

In 1991, Plaintiff filed a claim for supplemental security income and awarded benefits in 1993. Noting Plaintiff's age (23 at the time), 6th grade education, and lack of work experience the ALJ found her to be disabled and awarded her benefits. [Tr. 60-63].

Following this second claim for benefits, Plaintiff provided medical records as early as 2001 from Kunath, Burte, & Temming, M.D., that noted chronic pain in her hands, feet, and joints as well as her Raynaud's disease. [Tr. 872-907]. Her medical records also indicate a history of drug abuse and hospitalization relating to her drug dependence. [Tr. 208; 228;

299; 495]. In February 2009, Plaintiff was admitted to the Shannon West Texas Memorial Hospital ER in San Angelo, Texas, with a bone fracture to her left forearm, the injury a result of her slipping in the shower. She had surgery on the injury and was discharged with no complications. [Tr. 846]. She was hospitalized several times in 2010 for complications relating to a spider bite and twice due to chest pain. [Tr. 342; 392; 431].

Her records also indicate a history of psychiatric problems. Most recently, Plaintiff has been under the care of Dr. Sayed Raza at Appalachian Regional Healthcare who diagnosed Plaintiff with major depression and posttraumatic stress disorder. [Tr. 752-53]. She was also treated in 2011 and 2012 at Cumberland River Comprehensive Care for depression and difficulty sleeping. [Tr. 835; 873].

In connection with her application for benefits, Dr. Phil Pack performed a psychological assessment of Plaintiff twice. On March 4, 2011, although he diagnosed her with polysubstance dependence in remission and anxiety disorder, Dr. Pack noted that the test results were likely inconclusive, suspected Plaintiff's efforts were inconsistent, and recommended further review of her record. [Tr. 729-734]. He saw her again on August 8, 2011, again noting that Plaintiff was tearful and "very dramatic" and questioning whether his assessment could accurately describe her capabilities based on her efforts.

Similar to her prior visit, Plaintiff reported she was homeless and unable to count or read. She obtained a full-scale IQ score of 43, but Dr. Pack otherwise did not provide a diagnosis. [Tr. 822-25].

On March 16, 2011, Plaintiff underwent a consultative examination by state agency physician, Dr. Susan Rhoads. [Tr. 736-750]. At the exam Dr. Rhoads relayed that Plaintiff's intellectual functioning, hearing, and memory appeared normal. [Tr. 739]. Dr. Rhoads wrote that the examination revealed no tenderness, redness, warmth or swelling in the hands, and that Plaintiff was able to make a fist, had a 5/5 grip strength, and ability to write with her dominant hand. [Tr. 740]. However, there was a loss in range of motion and bony enlargement in the left wrist. [Tr. 743]. Dr. Rhoads found that Plaintiff's ability to perform work-related activities such as bending, stooping, lifting, prolonged standing, walking, crawling, squatting, carrying and traveling, pushing and pulling were impaired due to moderate Chronic Obstructive Pulmonary Disease and mild Restrictive Pulmonary Disease, lupus with Reynaud's phenomenon, rheumatoid arthritis, bradycardia and chest pain, inguinal hernia and post-traumatic arthritis in her left wrist. [Tr. 743].

In April 2011, non-examining consultative physician Dr. Dan Vandivier reviewed Plaintiff's record. He found some exertional

7

limitations, that Plaintiff could not push and pull frequently with lower extremities due to knee pain and tenderness and had a limited ability to squat as well. [Tr. 72]. Plaintiff was also limited in her bilateral handling due to pain in wrists and limited range of motion. [Tr. 73]. However, Dr. Vandivier found based on his review of the record that Plaintiff could understand and remember simple instructions, sustain concentration, interact frequently with co-workers but not with the public, and adapt to her environment. [Tr. 76-77].

Vocational expert Ms. Jane Hall testified at the hearing before the ALJ. [Tr. 51-54]. Ms. Hall testified that there would be jobs in the national economy that someone with Plaintiff's RFC could perform. [Tr. 52-]. Ms. Hall acknowledged that all of these jobs would require the Plaintiff to use her hands. [Tr. 54].

Plaintiff testified that the Reynaud's disease creates problems using her hands, and requires her to have assistance when getting dressed and in the shower. [Tr. 43-45]. Plaintiff also testified that she smokes approximately a pack a day. [Tr. 41]. She gets winded and has trouble breathing and does not go out for this reason, but rides on the motorized devices at the grocery store if she accompanies her daughter. [Tr. 47]. Maintaining that she does not go out, Plaintiff included that she has not been to the tanning bed in years, [Tr. 36], although

she used to go because it relieved the pain in her joints. [Tr. 50]. Plaintiff also testified that she does not drive. [Tr. 38]. In addition, Plaintiff referenced her history of rape and molestation by her brothers and stated that flashbacks of her experience lead to thoughts of hurting herself and feeling nervous around people. [Tr. 38]. She has been proscribed and is taking Prozac, Traxodone, and Neurontin. [Tr. 40].

Finally, the record also contains a report from the Cooperative Disability Investigations Unit of the SSA, which initiated an investigation of Plaintiff based on alleged fraud. [Tr. 827]. The investigator found that Plaintiff holds an Ohio driver's license that expired in 2011 and a criminal history relating to controlled substances and public intoxication. [Tr. 831]. The proprietor of a local store told the investigator that the Plaintiff visited the store one or two times a week, was able to count change and purchase her items without assistance, and walk around the store without any noticeable difficulty. [Tr. 832]. The owner of a local tanning bed salon stated on October 21, 2011 that the Plaintiff visited the salon twice per week and the visit log reflected that Plaintiff had used the tanning beds on 25 occasions between January 2011 and May 2011. [Tr. 832-33].

**IV. Analysis**

Plaintiff raises three arguments to support her claim, and the Court will address each in turn.

**1. The ALJ did not err by deviating from the previous ALJ finding from 1993.**

Plaintiff argues that, pursuant to *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997), and the Social Security Acquiescence Ruling, AR 98-4(6) (S.S.A. June 1, 1998), the ALJ should have adopted the 1993 decisional finding awarding Plaintiff benefits. The Commissioner responds that Plaintiff's condition has changed, and thus the ALJ was not bound by the prior finding.

In *Drummond*, the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842. The SSA incorporated this holding in AR 98-4(6), in which it instructed ALJs to adopt the findings in prior claims "unless there is new and material evidence relating to such a finding." AR 98-4(6).

In the 1993 decision awarding benefits to the Plaintiff, the ALJ relied heavily on the state agency psychiatrist's report. It noted a series of psychological issues as well Plaintiff's low IQ. The ALJ's finding, however, focused on the Plaintiff's low IQ and learning disability as the reason no work was possible. [Tr. 62, "Considering age (23), education (6th

grade), and work experience (none), there is no work possible."]. It is clear from the record that there is substantial evidence to suggest that Plaintiff's circumstances relating to a learning disability have since changed.

For example, the Plaintiff's own disability report stated that she could read and understand English. [Tr. 177]. The agency's investigation into Plaintiff's claims supplied a statement by a local store proprietor that Plaintiff often shops there and is able to do her own shopping and count change without assistance. [Tr. 832]. The state agency's consultative examiner, Dr. Rhoads, noted "[i]ntellectual functioning appears normal during the examination." [Tr. 739]. Finally, recent medical records from Plaintiff's treating physicians (Dr. Raza in particular) indicate that Plaintiff's intellectual capacities were normal. [Tr. 910, "Insight and judgment is fair;" Tr. 1066 "Has normal logical associations and normal reasoning pattern status;" Tr. 1092, "Has fair memory and fund of knowledge."]. The only evidence to the contrary is Plaintiff's performance at both of the state agency's psychiatric assessments with Dr. Pack, both of which Dr. Pack suspected Plaintiff was malingering and distrusted her efforts. [Tr. 728; 820].

The ALJ identified such evidence and concluded that new, material evidence showed the Plaintiff at least capable of carrying out simple instructions. [Tr. 22-24]. This Court finds

11

that because the circumstances had changed, the ALJ was not bound by the prior decision and thus, did not err in reaching a different conclusion.

**2. The ALJ's RFC finding and hypothetical posed to the vocational expert was based on substantial evidence.**

Plaintiff argues that the ALJ erred when it failed to include a restriction based on exposure to cold and Plaintiff's mental impairments in its RFC finding and subsequent hypothetical to the vocational expert. The Commissioner responds that the ALJ did take Plaintiff's mental impairments into account and that the exposure to cold restriction was properly excluded from the RFC finding and regardless, such a restriction would not change the ultimate conclusion that Plaintiff is not disabled.

Plaintiff refers to records from the office of Kunath, Burte, Temming, M.D., where Plaintiff was treated from 2001 until 2005. The 2005 record indicates Plaintiff was seen for chronic pain, livedo, and lupus and the physician proscribed Plaintiff medicine but stressed "preventative measures to keep her extremities warm." [Tr. 885]. The ALJ's residual functional capacity finding does not include any limitation regarding temperature exposure. However, no treating physician after 2005, [Tr. 342; 370; 397; 436; 481; 624; 911; 1066; 1092], nor any of the state agency's consultative examiners, [Tr. 739-43; 64-78],

noted the same or any similar restriction. Given the wealth of evidence that exposure to cold was not among Plaintiff's limitations after 2005, the ALJ did not err in excluding such a limitation from his RFC finding and subsequent hypothetical to the vocational expert.

Concerning Plaintiff's mental health, the ALJ did take this into account, requiring no more than casual, infrequent contact with co-workers and supervisors in a non-public setting, consistent with the recommendations of the state agency examiner's review of the record. [Tr. 21; 76-77]. Thus, Plaintiff's argument is unavailing.

**3. The ALJ's determination is based on substantial evidence.**

Plaintiff finally argues that the ALJ's determination is not based on substantial evidence because the "objective medical evidence unequivocally documents that the Plaintiff has several severe conditions which are disabling." The Commissioner responds that the ALJ's finding is supported by substantial evidence, and that Plaintiff has, nevertheless, waived her argument for failure to support her claim with citations to the record.

While it is difficult to discern from Plaintiff's bare assertion on this point, if the evidence Plaintiff refers to is the 2001-2005 medical records regarding Plaintiff's sensitivity

to cold, or Plaintiff's mental health record, the Court has already determined above that this argument is unpersuasive and that the ALJ's decision is based on substantial evidence. Beyond that, Plaintiff has not identified other parts of the ALJ's decision that lack support and has failed to develop an argument on this point. "Under these circumstances," the Court "decline[s] to formulate arguments on [the Plaintiff's] behalf, or undertake an open-ended review of the entirety of the administrative record." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). On the record before the Court, it appears that the ALJ's decision was based on substantial evidence, and Plaintiff has provides no reasons why an alternative conclusion is warranted.

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 15] be, and the same hereby is, **DENIED**; and

(2) that Defendant's Motion for Summary Judgment [D.E. 16] be, and the same hereby is, **GRANTED**.

This the 20th day of November, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge